FILED
AUG 17 2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| YVES DEUGOUE, *Plaintiff*, | § | |
| vs. | § | Civil Action No. 1:26 cv 2639 |
| HILTON WORLDWIDE HOLDINGS INC., HILTON DOMESTIC OPERATING COMPANY INC., PARK HOTELS & RESORTS INC., *Defendants* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Yves Deugoue ("Plaintiff"), appearing *pro se*, files this Complaint against Defendants Hilton Worldwide Holdings Inc. ("Hilton Worldwide"), Hilton Domestic Operating Company Inc. ("Hilton Domestic"), and Park Hotels & Resorts Inc. ("Park Hotels") (collectively, "Defendants", "Hilton Defendants", or simply "Hilton"), and alleges as follows:

## I. PARTIES

1. Plaintiff Yves Deugoue is an individual who is domiciled in, and is a citizen of, the State of Texas, residing in Camp County, Texas.

2. Defendant Hilton Worldwide Holdings Inc. is a corporation organized under the laws of the State of Delaware, with its "nerve center" and thus its principal place of business under 28 U.S.C. § 1332(c)(1) and *Hertz Corp. v. Friend*, 559 U.S. 77 (2020)---and, for that matter, its global headquarters--- located at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102, where Hilton Worldwide's high-level officers direct, control, and coordinate its activities. Accordingly, Hilton Worldwide is a citizen of Delaware and Virginia for purposes of 28 U.S.C.

§ 1332. On information and belief, Hilton Worldwide may be served through its registered agent in the Commonwealth of Virginia, Corporation Service Company (CSC), 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

3. Defendant Hilton Domestic Operating Company Inc. is a corporation organized under the laws of the State of Delaware, with its "nerve center" and thus its principal place of business under 28 U.S.C. § 1332(c)(1) and *Hertz Corp. v. Friend*, 559 U.S. 77 (2020)---and, for that matter, its global headquarters--- located at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102, where Hilton Domestic's high-level officers direct, control, and coordinate its activities. Accordingly, Hilton Domestic is a citizen of Delaware and Virginia for purposes of 28 U.S.C. § 1332. On information and belief, Hilton Domestic may be served through its registered agent in the Commonwealth of Virginia, Corporation Service Company (CSC), 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

4. Defendant Park Hotels & Resorts Inc. is a corporation organized under the laws of the State of Delaware, with its "nerve center", and thus its principal place of business under 28 U.S.C. § 1332(c)(1) and *Hertz Corp. v. Friend*, 559 U.S. 77 (2020)----and, for that matter, its headquarters--- located at 1775 Tysons Boulevard, 7th Floor, Tysons, Virginia 22102, where Park Hotels' high-level officers direct, control, and coordinate its activities. Accordingly, Park Hotels is a citizen of Delaware and Virginia for purposes of 28 U.S.C. § 1332. Park Hotels may be served through its registered agent in the Commonwealth of Virginia, Corporation Service Company (CSC), 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

5. On information and belief, Defendants Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. direct, manage, license, control, and administer the global brand standards, reservation networks, and central data systems for international properties, including

the Hilton Molino Stucky Venice hotel property ("the Hotel") at issue in this action. On information and belief, Defendant Park Hotels & Resorts Inc. (which was spun off from Hilton Worldwide Holdings Inc.'s owned and leased hotel segment in January 2017) does not own or lease the physical real estate of the Hilton Molino Stucky Venice; however, all named Defendants operate as a joint enterprise, common business design, or unified brand network regarding the administrative workflows, guest processing, and corporate liabilities that form the basis of the claims asserted herein.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction[1] over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship). Complete diversity exists because Plaintiff is a citizen of Texas, and Defendants are citizens of Delaware (state of incorporation) and Virginia (principal place of

---

[1] Plaintiff previously filed a civil action against Hilton Worldwide Inc. and Park Hotels & Resorts Inc. on this matter in the Texas District Court for Travis County in August 2025. Said defendants alleged that said court did not have personal jurisdiction over them and on the basis of their allegations as to lack of personal jurisdiction, said court dismissed the civil action "with prejudice" for lack of (personal) jurisdiction in December 2025. While the dismissal ***with prejudice*** for lack of (personal) jurisdiction was erroneous (as any dismissal for lack of jurisdiction must necessarily be ***without prejudice***), said error was harmless because in Texas, a court's judgment **is void** when the court issuing the judgment had "no jurisdiction to render judgment, or no capacity to act as a court." *State ex Rel. Latty v. Owens v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995). If jurisdiction "is missing, any judgment or order rendered by the court **is void**." *Ex parte Bowers*, 671 S.W.2d 931, 935 (Tex. App.—Amarillo 1984, no pet.) (Emphasis added) (citing *Austin Independent School District v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973)). *See also*, 2J. Moore and J. Lucas, **Moore's Federal Practice**, ¶ 4.02[3], at p. 4-66 (2d ed. 1991) ("Without jurisdiction over the person or the res, the court cannot enter a valid judgment".). The United States Supreme Court has been clear and peremptory as to the fact that an order or judgment entered by a court lacking personal or subject matter jurisdiction is not just voidable but **void *ab initio***. *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S.Ct. 696, 700 (2020). As the Texas District Court for Travis County stated it lacked jurisdiction, it had authority to dismiss the case for lack of jurisdiction but did not have authority to dismiss the case ***with prejudice***. Its judgment is therefore not just voidable but **void *ab initio***. *Id.*

business), pursuant to 28 U.S.C. § 1332(c)(1); and, to Plaintiff's knowledge, no separate hotel-operating entity whose joinder is required exists apart from the named Defendants; but even if such an entity did exist, its citizenship would not defeat complete diversity or otherwise affect this Court's jurisdiction, because Plaintiff does not sue any hotel operator directly; rather, as set forth in Paragraphs 26-44 below, Plaintiff sues Defendants on theories of agency, vicarious liability, and respondeat superior for the acts and/or omissions of their franchisees, agents, servants, and employees, and no operator or franchise is a required party under Fed. R. Civ. P. 19 for Plaintiff's claims against Defendants to proceed. No other party whose citizenship would defeat complete diversity is a necessary party to this action. The amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth in the itemized damages described in Section V below, including the unreversed unauthorized charges, reimbursements paid to displaced group members, emotional damages, and all related consequential and exemplary damages, and punitive damages. This sum is not speculative but is supported by the specific, itemized categories of damages set forth in Section V below, which include: (a) the unreversed, unauthorized credit card charges posted to Plaintiff's Visa and Mastercard accounts; (b) the reimbursements Plaintiff paid to displaced group members for the alternative accommodations Defendants' breach made necessary; (c) the transportation and related expenses Plaintiff incurred in traveling back to the Hotel to dispute the unauthorized charges; (d) emotional damages; and (e) other consequential damages to be proven at trial. In addition to these compensatory damages, the jurisdictional amount is independently supported by Plaintiff's claims for exemplary and punitive damages arising from Defendants' willful and wanton negligence (Count III) and actual fraud (Count IV), and by the statutory damages and/or reasonable attorneys' fees available under the Virginia Consumer Protection Act (Count V), Va. Code § 59.1-204. Courts

routinely include claims for punitive and consequential damages, as well as statutory damages and/or statutory attorneys' fees, in assessing whether the amount-in-controversy requirement is satisfied. *See Meadows v. Nationwide Mut. Ins. Co.*, No. 1:14-CV-04531-JMC, 2015 WL 3490062, at *2 (D.S.C. June 3, 2015). Accordingly, it does not appear to a legal certainty that Plaintiff's claim is for less than the jurisdictional amount. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

7. This Court has general personal jurisdiction over all Defendants because each is "at home" in the Commonwealth of Virginia, having its principal place of business within this district. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (a corporation is subject to general jurisdiction where it is incorporated and where it maintains its principal place of business).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in this district within the meaning of 28 U.S.C. § 1391(c)(2), each having its principal place of business in Fairfax County, Virginia, which lies within the Alexandria Division of the Eastern District of Virginia.

## III. <u>STATEMENT OF FACTS</u>

9. On July 27, 2023, Plaintiff, while physically present at his residence in Camp County, Texas, utilized the internet to initiate, negotiate, and execute three distinct commercial lodging contracts via Booking.com for a group stay from August 20, 2023, to August 23, 2023, at the Hilton Molino Stucky Venice hotel in Venice, Italy ("the Hotel"). These binding digital reservations, identified by reservation and confirmation tracking credentials (Confirmation Nos. 3189004553, 3343394715, and 3343373658), were made for a total of five suites and rooms at the Hotel, for a group stay from August 20, 2023 to August 23, 2023. Plaintiff's financial resources from United States-based credit card companies were targeted and utilized to guarantee and fund these

transactions. The financial resources used to guarantee and fund these transactions were drawn from credit card accounts belonging to a Texas consumer (Plaintiff), causing the financial impact of the transaction to occur in the United States, and specifically in the State of Texas.

10. On information and belief, the booking data, financial authorizations, reservation processing, and related corporate administration were transmitted to, processed through, or overseen by Defendants' centralized corporate systems and personnel operating from or under the direction of their McLean, Virginia headquarters.

11. Defendants maintained and administered the centralized reservation, guest-account, billing, and payment-processing infrastructure through which Plaintiff's reservations were accepted, recorded, guaranteed, and subsequently charged.

12. The disputed charges were therefore not solely acts of an independent Italian hotel; they were transactions processed through Defendants' centralized corporate systems and subject to policies, procedures, and controls administered from Virginia.

13. The Hotel is an interactive node of the global hospitality network controlled by Defendants. The Hotel systematically operates under the "Hilton Hotels & Resorts" brand flag and, on information and belief, is managed, directed, and operationally controlled pursuant to an active, long-term hotel management agreement, franchise license, or joint-venture agreement executed between the property's titleholder and Defendants Hilton Worldwide Holdings Inc. and/or Hilton Domestic Operating Company Inc.

14. Through this interconnected corporate arrangement, the Hilton Defendants directly supply, control, and dictate the underlying booking engine infrastructure, the digital reservation data processing networks, the universal guest operating standards, and the integrated "Hilton Honors"

loyalty program framework utilized by the Hotel to solicit and service consumers from all over the United States (including consumers from Texas and Virginia).

15. On August 20, 2023, when Plaintiff and the members of his group arrived at the Hotel, the Hotel did not honor the reservations as booked. Rooms were assigned haphazardly, and several group members who arrived later were told that no rooms remained available for the group, notwithstanding that the reservations had been made for a sufficient number of rooms.

16. As a result, several group members were left without confirmed lodging and were forced to locate alternative, substantially more expensive accommodations on short notice, in a foreign country whose language they did not speak.

17. Only at checkout did Hotel staff acknowledge that rooms included in Plaintiff's reservations had gone unused due to the Hotel's own errors in room assignment.

18. As the individual who had made the group's reservations, Plaintiff bore responsibility, in the eyes of the group, for the group's displacement, and Plaintiff made financial payments to affected group members to compensate them for the cost of the alternative accommodations they were forced to secure.

19. Several days after checking out of the Hotel, Plaintiff discovered two unauthorized charges, in substantial amounts, posted by the Hotel to two of Plaintiff's separate credit card accounts (a Visa card ending in 9358 and a Mastercard ending in 1240).

20. Plaintiff telephoned the Hotel to dispute the unauthorized charges. The Hotel did not resolve the dispute by telephone.

21. Because the Hotel would not resolve the matter remotely, and Plaintiff was, by that time, already more than 1,000 miles from Venice continuing the remainder of his trip, Plaintiff was

required to travel back to the Hotel in person to dispute the charges directly with Hotel management, incurring additional transportation and related expenses to do so.

22. Upon Plaintiff's return to the Hotel, Hotel staff acknowledged the charges were improper and told Plaintiff they would be reversed. At that time, Plaintiff reasonably believed, based on Hotel staff's acknowledgment and assurance, that the unauthorized charges were the product of an inadvertent billing error that Defendants would promptly correct, not a knowing or intentional wrongdoing.

23. The unauthorized charges were never reversed. Following his return home, Plaintiff pursued formal dispute proceedings with the issuers of both credit cards and with Booking.com in an effort to resolve what Plaintiff still believed, at that time, to be a billing error.

24. This was not merely a dispute about what happened in a hotel in Venice. It was a transaction initiated by an American consumer, using American financial instruments, processed through an international corporate reservation system, followed by a cross-border billing dispute involving U.S. financial institutions and Booking.com, and ultimately resulting in the retention of funds from the American consumer.

25. In September 2024, upon the conclusion of that lengthy credit card dispute process, Plaintiff first discovered, or by the exercise of reasonable diligence first should have discovered, that Defendants' assurance that the charges would be reversed had not been made in good faith, and that Defendants had in fact knowingly retained the unauthorized charges notwithstanding that assurance, rather than having made an inadvertent billing error as Plaintiff had until then reasonably believed.

**AGENCY, VICARIOUS LIABILITY, APPARENT AGENCY, RATIFICATION AND RESPONDEAT SUPERIOR**

26. Plaintiff alleges that the reservations at issue were initiated and transmitted through Booking.com, which served as the online booking intermediary through which Plaintiff reserved accommodations at the Hilton Molino Stucky Venice. Plaintiff does not allege that Booking.com was an employee or agent of any Hilton Defendant. Rather, Plaintiff alleges that Booking.com transmitted the reservations to the Hotel, and that the Hotel thereafter accepted, administered, performed, and billed the reservations as a Hilton-branded property.

27. The fact that the reservations were initiated through Booking.com does not eliminate the separate agency relationship, if any, between the Hotel and the Hilton Defendants. The Hotel's subsequent conduct in administering the reservations, assigning rooms, processing guest accounts, imposing charges, responding to Plaintiff's billing dispute, and representing to Plaintiff that the disputed charges would be reversed constituted conduct separate from Booking.com's role as an online booking intermediary.

28. Virginia law recognizes that a franchise relationship does not, by itself, establish an agency relationship, but neither does the label "franchise" insulate a franchisor from agency liability. The controlling inquiry is the nature and extent of the franchisor's control over the franchisee. *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 492–95, 219 S.E.2d 874, 876–78 (1975). In *Murphy*, the Supreme Court of Virginia explained that "[t]he fact that an agreement is a franchise contract does not insulate the contracting parties from an agency relationship" and that an agency relationship may arise where the franchise arrangement gives the franchisor sufficient control over the franchisee. Id. at 494–95, 219 S.E.2d at 877–78.

29. Plaintiff alleges facts showing substantially more than the mere licensing of a trademark or the maintenance of general brand standards. On information and belief, the Hilton Defendants controlled or exercised substantial authority over the Hotel's reservation infrastructure, guest-

account systems, payment-processing systems, the Hilton brand loyalty program (Hilton Honors program), reservation and marketing systems, credit-processing systems, website, and other systems through which Plaintiff's transaction was administered, as well as employment policies and procedures, training, and brand standards.

30. Specifically, regarding the Hotel, on information and belief, the Hilton Defendants control the day-to-day operations, brand standards, staff training, guest service protocols, and the digital booking/Hilton Honors ecosystem; and the Hilton Defendants dictate the upper-tier brand execution, **appoint the general manager**, and enforces worldwide compliance rules; while the franchise owner (the Marseglia Group) plays a financial and structural role, namely the Marseglia Group holds the real estate risk, bears the capital debt, funds large-scale renovations or extraordinary property maintenance, and handles heavy asset-level financial obligations.

31. On information and belief, the Hotel does not have an independent website but instead, information on the Hotel is obtained, and direct reservations with the Hotel are made, through the Hilton website, specifically at https://www.hilton.com/en/hotels/vcehihi-hilton-molino-stucky-venice/. Contacting the hotel by e-mail is done through a Hilton-controlled e-mail: venice.info@hilton.com.

32. Plaintiff further alleges that the Hilton Defendants established and administered uniform guest-service, reservation, billing, payment-processing, and operational standards applicable to Hilton-branded properties, including the Hotel. These allegations concern operational systems directly implicated by Plaintiff's claims and are not limited to architectural design, trademark usage, or general brand identity.

33. The distinction is significant under Virginia law. In *Murphy*, the Supreme Court of Virginia found no agency because the franchisor lacked control over the franchisee's day-to-day

operations, including its business expenditures, customer rates, hiring and firing, employee working conditions, work routines, and discipline. 216 Va. at 495, 219 S.E.2d at 878. Plaintiff alleges that the Hilton Defendants exercised control over systems and functions directly connected to the very conduct giving rise to this action, including reservation processing, guest-account administration, payment processing, and billing.

34. Federal courts applying Virginia law have recognized that allegations concerning a franchisor's control over reservation systems and credit-processing systems can be sufficient to plead an agency relationship at the motion-to-dismiss stage. *See*, ***S.G. v. Coastal Hospitality Assocs., LLC***, **No. 2:25-cv-274, 2025 WL 3243431, at *4 (E.D. Va. Nov. 20, 2025) (holding allegations concerning franchisor control over reservation systems, brand loyalty programs, websites, employment policies and procedures, credit-processing systems, training, and brand standards sufficient to plead an agency relationship and permit knowledge to be imputed to the franchisor).**

35. Accordingly, Plaintiff alleges that, with respect to the reservation, guest-account, billing, payment-processing, and dispute-resolution functions at issue in this action, the Hotel and the personnel performing those functions acted as actual agents of one or more of the Hilton Defendants, subject to the Hilton Defendants' authority and control and within the scope of that agency.

36. To the extent discovery establishes that the Hilton Defendants did not exercise actual control sufficient to establish actual agency, Plaintiff pleads in the alternative that the Hilton Defendants created and maintained an appearance that the Hotel was acting as part of the Hilton enterprise and with authority from Hilton.

37. In particular, the Hotel operated under the Hilton name and Hilton Hotels & Resorts brand, utilized Hilton-branded reservation and guest-account systems, participated in Hilton's loyalty program, and presented itself to consumers as part of the Hilton hospitality network, including on the Booking.com platform where the reservations at issue were made. Plaintiff alleges that these representations were made by or with the authorization of the Hilton Defendants.

38. Plaintiff reasonably relied upon that appearance of authority in dealing with the Hotel concerning his reservations and, particularly, in relying upon Hotel personnel's representation that the unauthorized charges would be reversed.

39. Plaintiff therefore pleads apparent or ostensible agency in the alternative. Plaintiff does not contend merely that the Hotel's use of the Hilton trademark automatically establishes agency. Rather, Plaintiff alleges that the Hilton Defendants' own representations, branding, reservation infrastructure, guest-account systems, and other conduct created the appearance that the Hotel and its personnel possessed authority to act on Hilton's behalf with respect to the transactions at issue.

40. Plaintiff further alleges that, after the disputed charges were brought to the attention of the Hilton enterprise through Plaintiff's communications, credit-card disputes, Booking.com dispute proceedings, and other channels, one or more Hilton Defendants knew or should have known of the Hotel's conduct and the Hotel's representation that the charges would be reversed.

41. To the extent the Hilton Defendants acquired knowledge of the material facts and nevertheless retained, adopted, approved, or failed to repudiate the Hotel's conduct, Plaintiff alleges that such conduct constituted ratification. Plaintiff pleads ratification as an additional and alternative basis for imputing the Hotel's relevant conduct to the applicable Hilton Defendant.

42. Independently of any agency or vicarious-liability theory, Plaintiff alleges that each Hilton Defendant is directly liable for its own conduct to the extent it itself participated in, directed, authorized, controlled, ratified, or failed to reasonably correct the reservation, billing, payment-processing, guest-account, or dispute-resolution practices that caused Plaintiff's injuries.

43. Plaintiff therefore pleads liability in the alternative based upon: (a) actual agency; (b) apparent or ostensible agency; (c) ratification; and (d) the Hilton Defendants' own direct acts and omissions. Plaintiff does not rely solely upon the existence of a franchise relationship or the Hotel's use of the Hilton trademark.

44. All acts and omissions alleged herein were undertaken by Defendants themselves, and/or by Defendants' respective franchisees, officers, agents, servants, or employees, acting within the scope of their actual, apparent, or inherent authority, and with the knowledge, authorization, or ratification of Defendants, such that Defendants are either, on their own, liable for those acts and omissions, or vicariously liable for those acts and omissions under principles of agency and respondeat superior.

## IV. <u>CAUSES OF ACTION</u>

**<u>CHOICE OF LAW:</u> Virginia Law Governs the Substantive Claims, or, in the Alternative, Virginia Law Governs the Claims Arising From Defendants' Virginia-Based Conduct**

45. This action arises from a multistate consumer transaction involving substantial and material contacts with the Commonwealth of Virginia, the State of Texas, the Republic of Italy, and the United States. Plaintiff does not contend that the mere location of Defendants' corporate headquarters automatically causes Virginia law to govern every aspect of an international transaction. Rather, Plaintiff alleges facts establishing that the transaction, its financial

administration, the subsequent billing dispute, and the conduct giving rise to Plaintiff's tort and consumer-protection claims involved substantial Virginia-based corporate conduct.

46. A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Accordingly, this Court must apply Virginia's choice-of-law rules.

47. Virginia adheres to traditional choice-of-law principles. For tort claims, Virginia applies *lex loci delicti*, under which substantive rights are generally governed by the law of the place of the wrong. *McMillan v. McMillan*, 219 Va. 1127, 1130, 253 S.E.2d 662, 664 (1979). For purposes of that rule, the place of the wrong is generally the place where the last event necessary to make the defendant liable for the alleged tort occurs. *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *Insteel Industries, Inc. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 487–88 (E.D. Va. 2003). Virginia applies a related but distinct rule to contractual disputes. The nature, validity, and interpretation of a contract ordinarily are governed by the law of the place where the contract was made, while matters concerning performance generally are governed by the law of the place of performance. *Erie Insurance Exchange v. Shapiro*, 248 Va. 638, 640, 450 S.E.2d 144, 145 (1994); *Black v. Powers*, 48 Va. App. 257, 278–79, 629 S.E.2d 307, 318 (2006). A contract is generally made where the last act necessary to create a binding agreement occurs. *Resource Bankshares Corp. v. St. Paul Mercury Insurance Co.*, 407 F.3d 631, 635 (4th Cir. 2005).

48. The transactions at issue here cannot reasonably be characterized as transactions occurring exclusively in Italy. Plaintiff was physically located in Texas when he initiated and completed the reservations. The reservations were made electronically through Booking.com, confirmed on Defendants' behalf, and guaranteed through Plaintiff's U.S.-issued credit cards. The disputed

charges were imposed against those U.S. credit-card accounts after Plaintiff had departed Italy. Plaintiff thereafter pursued formal disputes with the issuers of both credit cards and with Booking.com from the United States. The dispute process continued for an extended period and ultimately concluded in September 2024.

49. Plaintiff further alleges, on information and belief, that the booking information, financial authorizations, reservation-processing information, guest-account information, and related corporate administration were transmitted to, processed through, or overseen by Defendants' centralized corporate systems and personnel operating from or under the direction of Defendants' headquarters in McLean, Virginia.

50. These Virginia contacts are not merely incidental contacts. They concern the very transactions at issue: the reservations, processing of financial authorizations, administration of guest and reservation information, corporate handling of billing information, and administration of the relationship between Defendants and Plaintiff.

51. The post-transaction conduct is also material. After Plaintiff discovered the disputed charges, the dispute was not confined to communications at the Italian hotel. Plaintiff pursued the charges through U.S.-based credit-card dispute procedures and through Booking.com. Defendants thereby became involved in a continuing dispute concerning charges made against Plaintiff's U.S. financial accounts.

52. Plaintiff alleges that the Hotel's representative acknowledged that the disputed charges were improper and represented that the charges would be reversed. Plaintiff reasonably relied upon that representation and initially believed that the charges resulted from an inadvertent billing error that would be corrected.

53. Plaintiff thereafter pursued the matter through his credit-card issuers and Booking.com. Plaintiff alleges that it was not until September 2024, upon the conclusion of that dispute process and the information revealed through that process, that he discovered, or through reasonable diligence first should have discovered, facts giving him reason to conclude that the representation concerning reversal had not been made in good faith.

54. The foregoing facts establish substantial Virginia contacts with the conduct underlying Plaintiff's claims. In particular, to the extent Defendants' Virginia-based corporate systems, personnel, policies, or decision-making participated in processing, administering, maintaining, verifying, or refusing to reverse the disputed charges, the last event necessary to establish liability for the resulting corporate misconduct occurred, in whole or in part, through Virginia-based operations.

55. Accordingly, Virginia substantive law governs Plaintiff's tort claims to the extent the Court determines that the last event necessary to impose liability occurred through Defendants' Virginia-based corporate operations. See *Quillen*, 789 F.2d at 1044; *Insteel Industries*, 276 F. Supp. 2d at 487–88.

56. Virginia law likewise governs those contractual obligations concerning reservation processing, payment authorization, billing administration, and other performance occurring through Defendants' Virginia-based corporate operations. See *Black*, 48 Va. App. at 278–79, 629 S.E.2d at 318.

57. To the extent the Court determines that Italian law or another jurisdiction's law governs a particular issue, Plaintiff pleads the corresponding claim in the alternative under the law determined by the Court to apply. Plaintiff does not waive any alternative theory merely because Virginia law is his principal asserted choice of substantive law.

58. Plaintiff further pleads that application of Virginia law to Defendants' Virginia-based conduct would not constitute an impermissible extraterritorial application of Virginia law. Plaintiff's claims concerning Defendants' Virginia-based corporate administration, financial processing, billing practices, dispute handling, and related representations seek to regulate conduct occurring in or emanating from Virginia, rather than merely to regulate the physical operation of an Italian hotel.

59. Accordingly, Plaintiff respectfully requests that the Court apply Virginia substantive law to the claims arising from Defendants' Virginia-based conduct and, where appropriate, to the entire claim under Virginia's traditional choice-of-law rules.

**COUNT I — BREACH OF CONTRACT**

60. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

61. Plaintiff entered into binding lodging arrangements for the Hilton Molino Stucky Venice through Booking.com, which served as the online booking intermediary through which Plaintiff initiated and transmitted the reservations identified in this Complaint. The Hotel accepted and confirmed those reservations and undertook the corresponding obligations to provide the accommodations reserved by Plaintiff.

62. Plaintiff does not allege that Booking.com was an employee or agent of any Hilton Defendant. Rather, Plaintiff alleges that Booking.com transmitted Plaintiff's reservations to the Hotel and that the Hotel thereafter administered, performed, and billed those reservations as a Hilton-branded property operating within the Hilton hospitality network.

63. Plaintiff performed his obligations under the reservation agreements, including providing the requested payment information and guaranteeing the reservations through his U.S.-issued credit cards.

64. The reservation agreements required the Hotel to provide the accommodations reserved by Plaintiff at the agreed rates and under the terms reflected in the confirmed reservations.

65. Defendants breached the contractual obligations by, among other things:

a. failing to provide Plaintiff with the accommodations corresponding to the confirmed reservations;

b. failing to honor the agreed reservation arrangements;

c. failing to administer the reservations in accordance with the confirmed booking information;

d. imposing charges against Plaintiff's payment instruments that Plaintiff did not authorize and that were not permitted by the reservation agreements;

e. failing to reverse the disputed charges after the Hotel's representatives acknowledged that the charges were improper and expressly represented that they would be reversed; and

f. otherwise failing to perform the obligations arising from the confirmed reservations and related guest-account and billing arrangement.

66. To the extent the Hotel's personnel acted on behalf of one or more Hilton Defendants with respect to reservation administration, guest-account administration, billing, payment processing, or resolution of Plaintiff's billing dispute, those personnel acted within the scope of actual authority conferred by the applicable Hilton Defendant.

67. These allegations concern operational functions directly connected to Plaintiff's claims and are materially different from an allegation based solely upon the Hotel's use of the Hilton trademark. Courts applying Virginia agency principles have recognized that allegations concerning a franchisor's control over reservation systems, credit-processing systems, loyalty programs, websites, employment policies, training, and brand standards can be sufficient to plead a plausible agency relationship between a franchisor and hotel franchisee. See *S.G. v. Coastal*

*Hosp. Assocs., LLC*, No. 2:25-cv-274, slip op. at 11–12 (E.D. Va. Nov. 20, 2025); *Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-cv-204, slip op. at 17–18 (E.D. Va. 2025).

68. Accordingly, Plaintiff alleges that the Hotel and its relevant personnel acted as actual agents of one or more Hilton Defendants with respect to the particular reservation, guest-account, billing, payment-processing, and dispute-resolution functions that form the basis of Plaintiff's claims.

69. Alternatively, Plaintiff alleges that the Hilton Defendants created and maintained an appearance that the Hotel was acting with Hilton's authority. The Hotel operated under the Hilton name and Hilton Hotels & Resorts brand and utilized Hilton-branded systems and programs. Plaintiff alleges that those representations were made by, authorized by, or maintained through conduct attributable to the Hilton Defendants.

70. Plaintiff reasonably relied upon that appearance of authority when dealing with the Hotel concerning the reservations and, in particular, when relying upon Hotel personnel's representation that the unauthorized charges would be reversed.

71. Plaintiff therefore pleads actual agency and apparent authority in the alternative. Plaintiff does not contend that the mere existence of a franchise relationship automatically establishes agency. Rather, Plaintiff alleges that the Hilton Defendants' own conduct, representations, systems, and operational controls created an agency relationship or, alternatively, an objectively reasonable appearance of authority.

72. Plaintiff further alleges that, after the Hotel's conduct was brought to the attention of the Hilton enterprise through Plaintiff's communications, Booking.com dispute proceedings, credit-card dispute proceedings, and other channels, the applicable Hilton Defendants knew or should

have known of the disputed charges and the Hotel's representation that those charges would be reversed.

73. To the extent the applicable Hilton Defendant acquired full knowledge of the material facts and thereafter adopted, approved, accepted, retained the benefits of, or failed to repudiate the Hotel's conduct, Plaintiff alleges that such conduct constituted ratification. See *State Farm Mut. Auto. Ins. Co. v. Weisman*, 247 Va. 199, 204, 441 S.E.2d 16, 19 (1994).

74. Independently of any agency theory, Plaintiff alleges that the Hilton Defendants are directly liable to the extent they themselves participated in, directed, authorized, controlled, or ratified the reservation, guest-account, billing, payment-processing, or dispute-resolution conduct alleged herein.

75. Plaintiff therefore seeks to hold each Defendant liable to the extent established by the particular contractual, agency, apparent-authority, ratification, or direct-participation relationship applicable to that Defendant.

76. Plaintiff alleges that substantial contractual activity occurred in multiple jurisdictions, including Texas, Italy, and Virginia. In particular, the reservations were initiated and completed electronically from Texas; payment obligations were performed through U.S.-issued financial instruments; the reservations and financial authorizations were processed through Defendants' centralized systems; and the disputed billing relationship continued through Defendants' subsequent administration of the charges.

77. Under Virginia's choice-of-law principles, questions concerning performance are governed by the law of the place of performance, and where contractual performance is distributed among jurisdictions, the Court should determine the applicable law based upon the particular contractual

obligation at issue. *Black v. Powers*, 48 Va. App. 257, 278–79, 629 S.E.2d 307, 318 (2006); *East West, LLC v. Rahman*, 2012 WL 4127307, at *13 (E.D. Va. Sept. 18, 2012).

78. Plaintiff therefore alleges that Virginia law governs the contractual obligations concerning the reservation-processing, payment, billing, and corporate-administration functions performed through Defendants' Virginia-based operations.

79. Alternatively, if the Court determines that either Texas or Italian law governs any aspect of the underlying lodging contract, Plaintiff pleads that Defendants nevertheless breached those contractual obligations under the law determined by the Court to apply.

80. As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages, including the unreversed charges, reasonable expenses incurred in obtaining substitute accommodations, payments made to displaced members of his group, transportation and related expenses incurred in attempting to resolve the charges, and other consequential damages recoverable under the governing law.

81. Plaintiff is entitled to recover all damages permitted under the law governing the particular contractual obligation, together with prejudgment interest, costs, and such other relief as the Court deems proper.

**COUNT II — CONVERSION (Pled in Addition to Count I, or Alternatively Pled in the Alternative to Count I)**

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. This Count is pleaded in addition to, or alternatively in the alternative to Plaintiffs breach-of-contract claim and is based upon Defendants' alleged wrongful exercise of dominion and control over specifically identifiable funds and payment transactions, rather than merely upon a failure to perform a contractual promise. A conversion claim may exist independently of a

contractual claim where the defendant's conduct violates a common-law duty not to wrongfully exercise dominion over another's property. *Condominium Services, Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc.*, 281 Va. 561, 567–68, 709 S.E.2d 163, 166–67 (2011).

84. Plaintiff alleges that Defendants, directly or through the Hotel, its agents, employees, or other persons acting with actual or apparent authority, caused unauthorized charges to be imposed against Plaintiff's identified Visa and Mastercard accounts.

85. The disputed charges were specifically identified transactions associated with Plaintiff's identified financial accounts and were not authorized by Plaintiff.

86. Plaintiff promptly disputed the charges and demanded that they be reversed.

87. Hotel personnel acknowledged that the charges were improper and represented to Plaintiff that they would be reversed.

88. Notwithstanding that acknowledgment and representation, the charges were not reversed and remained charged against Plaintiff's financial accounts.

89. Plaintiff alleges that the Hotel personnel who imposed, administered, or addressed the disputed charges were acting within the scope of actual authority, apparent authority, or other agency relationship with one or more Hilton Defendants, or that the Hilton Defendants subsequently ratified the conduct.

90. Virginia recognizes conversion as a tort arising from the wrongful exercise of dominion or control over property belonging to another. *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75–76, 92 S.E.2d 359, 365 (1956); *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344, 576 S.E.2d 438, 443 (2003).

91. Plaintiff recognizes that Virginia law imposes limitations upon conversion claims involving money and generally requires that the money be sufficiently identifiable or constitute a specific,

identifiable fund. See *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1020 (E.D. Va. 2018).

92. Plaintiff therefore alleges that the amounts at issue were specifically identifiable charges associated with identified transactions and identified payment accounts and further alleges that discovery will establish the identity of the entities that received, processed, retained, or controlled those funds.

93. To the extent the disputed funds were received, processed, retained, or controlled by a Hilton Defendant, that Defendant directly exercised dominion over Plaintiff's property.

94. To the extent the disputed funds were received, processed, retained, or controlled by the Hotel or its personnel while acting within the scope of actual or apparent authority, Plaintiff alleges that the applicable Hilton Defendant is vicariously liable for the conduct under established principles of agency.

95. To the extent a Hilton Defendant knowingly adopted, approved, accepted, or failed to repudiate the Hotel's conduct after acquiring knowledge of the material facts, Plaintiff alternatively alleges liability based upon ratification. See *Weisman*, 247 Va. at 204, 441 S.E.2d at 19.

96. Plaintiff further alleges that the wrongful exercise of dominion occurred after Plaintiff specifically disputed the charges and after the Hotel acknowledged that they were improper and promised reversal.

97. Under Virginia's *lex loci delicti* rule, Virginia law governs this conversion claim because the wrongful exercise of dominion or control over Plaintiff's property was undertaken by Defendants' agents and/or employees acting within the scope of their actual or apparent authority, and those acts are attributable to the Virginia-based corporate Defendants under

principles of agency and respondeat superior. *See*, *McMillan v. McMillan*, 219 Va. 1127, 1130, 253 S.E.2d 662, 664 (1979); *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). Under Virginia law, conversion occurs when a defendant wrongfully exercises or assumes authority over another's property, thereby depriving the owner of possession, and "[a]ny distinct act of dominion wrongfully exerted over the property of another" may constitute conversion. *See*, *McCants v. CD & PB Enterprises, LLC*, 303 Va. 19, 27 (2024); *Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc.*, 281 Va. 561, 569–70 (2011). Where such conduct is committed by an agent acting within the scope of the agency, the conduct is attributable to the principal for purposes of vicarious liability. Accordingly, the relevant conduct for purposes of the choice-of-law analysis includes the acts of Defendants' agents undertaken on Defendants' behalf and in furtherance of Defendants' business. To the extent those agents' conduct constitutes the wrongful exercise of dominion over Plaintiff's property, Defendants may not avoid application of Virginia law merely by characterizing the immediate actor as a separate employee, agent, or hotel-level representative.

98. Plaintiff further alleges that, independently of any agency or vicarious liability, Defendants are directly liable because the wrongful retention and exercise of dominion over Plaintiff's property occurred, at least in part, through Defendants' administration and processing of the disputed transactions and subsequent billing dispute.

99. Plaintiff suffered damages in an amount to be established at trial, including the amount of the unreversed charges, consequential damages, pre-judgment interest, and post-judgment interest, and other damages recoverable under applicable law.

100. Plaintiff further seeks punitive damages to the extent permitted by the governing law because the alleged retention and exercise of dominion over Plaintiff's property was intentional, willful, oppressive, or undertaken with conscious disregard of Plaintiff's property rights.

**COUNT III — WILLFUL AND WANTON NEGLIGENCE, OR IN THE ALTERNATIVE, NEGLIGENCE (Including Direct, Agency, and Vicarious Liability)**

101. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102. Plaintiff's negligence claim is based upon duties independent of the express contractual promises alleged in Count I.

103. Defendants owed Plaintiff duties of reasonable care independent of the express contractual obligations alleged in Count I. Those duties arose from, among other things, the special relationship between an innkeeper and its guest; Defendants' undertaking to receive, process, administer, and safeguard Plaintiff's payment and guest-account information; Defendants' affirmative undertaking to investigate and address Plaintiff's dispute concerning unauthorized charges; and Defendants' control over the reservation, guest-account, billing, and payment-processing functions through which Defendants handled Plaintiff's property and financial information.

104. Virginia recognizes that certain relationships give rise to duties of care independent of contract. The relationship between an innkeeper and its guest is a recognized special relationship under Virginia law. *See*, *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 324–27, 626 S.E.2d 428, 433–35 (2006). Although *Taboada* addressed an innkeeper's duty in the context of protection against criminal conduct, its recognition of the innkeeper-guest relationship as a special relationship supports the existence of common-law duties arising from that relationship independent of the parties' contractual promises.

105. Independently of any contractual obligation, once Defendants undertook to receive, process, administer, and control Plaintiff's payment information and guest account, Defendants were required to exercise reasonable care in performing those undertakings and in exercising control over Plaintiff's payment information and funds. Defendants further assumed a duty to exercise reasonable care when, after Plaintiff specifically disputed the charges, Hotel personnel undertook to investigate the charges, acknowledged that they were improper, and represented that the charges would be reversed.

106. The duties alleged herein are not merely duties to perform the reservation contract. They arise from Defendants' common-law obligations associated with their special relationship with Plaintiff as a hotel guest and from their affirmative conduct in undertaking to handle Plaintiff's payment information, investigate the disputed charges, and correct the allegedly unauthorized charges. Virginia law permits a tort claim to proceed where the alleged tort arises from a duty imposed by law independently of the contract. See *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 246 Va. 553, 558, 436 S.E.2d 694, 697 (1993); *Tuel v. Hertz Equip. Rental Corp.*, 194 F. App'x 100, 106–07 (4th Cir. 2006).

107. Virginia law permits a tort claim to coexist with a contractual claim where the alleged breach concerns a duty imposed by common law and independent of the contract itself. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 246 Va. 553, 558, 436 S.E.2d 694, 697 (1993); see also *Tuel v. Hertz Equip. Rental Corp.*, 194 F. App'x 100, 106–07 (4th Cir. 2013) (applying Virginia law and explaining that a tort claim must arise from breach of an independent common-law duty).

108. Defendants breached those independent duties by, among other things:

a. failing to exercise reasonable care in administering Plaintiff's confirmed reservations;
b. failing to exercise reasonable care in assigning rooms to Plaintiff's group;

c. failing to exercise reasonable care in administering Plaintiff's guest-account and payment information;

d. failing to exercise reasonable care in processing and investigating disputed charges;

e. failing to take reasonable steps to prevent unauthorized charges from being imposed or retained; and

f. failing to take reasonable corrective action after being placed on notice that the charges were unauthorized and improper.

g. failing to exercise reasonable care after Hotel personnel affirmatively undertook to have the charges reversed; and

h. otherwise negligently performing the undertakings that Defendants voluntarily assumed in connection with Plaintiff's guest account, payment information, and disputed charges.

109. Defendants knew or reasonably should have known that their negligent handling of Plaintiff's payment information, disputed charges, and requests for correction could cause Plaintiff financial loss and other foreseeable harm. The harm alleged was a foreseeable consequence of Defendants' failure to exercise reasonable care in handling the disputed charges after receiving actual notice of the alleged error.

110. To the extent the Hotel personnel who undertook these functions were agents, employees, or apparent agents of one or more Hilton Defendants, each applicable Hilton Defendant is vicariously liable for their negligent conduct committed within the scope of their actual or apparent authority. Plaintiff further alleges that the Hilton Defendants themselves directly participated in, controlled, administered, or ratified the reservation, guest-account, billing, payment-processing, and dispute-resolution functions at issue.

111. As a direct and proximate result of Defendants' breach of these duties, Plaintiff suffered actual damages, including the unreversed charges and other economic losses proximately resulting from Defendants' negligent conduct, in an amount to be established at trial.

112. Plaintiff's negligence/willful and wanton negligence claims are pleaded separately from his breach-of-contract claim because the duties alleged herein arise independently from the

contractual promises and concern Defendants' common-law obligations in handling Plaintiff's property, transactions, and hotel services. Alternatively, this Count is pleaded in the alternative to Count I. Plaintiff seeks all damages and other relief recoverable under applicable law.

113. Plaintiff alleges that these acts and omissions were committed either directly by the Hilton Defendants or by Hotel personnel acting within the scope of actual or apparent agency.

114. As alleged above, the Hilton Defendants exercised or retained substantial control over centralized reservation, guest-account, payment-processing, and other operational systems directly implicated by Plaintiff's claims.

115. Under *Murphy*, whether a franchisor-franchisee relationship constitutes an agency relationship turns upon the nature and extent of the franchisor's control. 216 Va. at 492–95, 219 S.E.2d at 876–78. Plaintiff alleges control over the particular operational functions implicated here rather than relying merely upon the existence of the Hilton franchise or trademark.

116. Plaintiff therefore alleges that the Hotel and its relevant personnel acted as agents of one or more Hilton Defendants in performing the functions that resulted in Plaintiff's injuries.

117. Alternatively, Plaintiff alleges apparent authority because the Hilton Defendants held the Hotel out as operating as part of the Hilton enterprise and maintained Hilton-branded reservation and guest-service systems through which Plaintiff's transaction was administered.

118. Plaintiff further alleges ratification to the extent one or more Hilton Defendants acquired knowledge of the disputed conduct and thereafter adopted, accepted, retained the benefits of, or failed to repudiate that conduct. See *Weisman*, 247 Va. at 204, 441 S.E.2d at 19.

119. Defendants' conduct rose above ordinary negligence and constituted willful and wanton negligence to the extent Defendants knowingly or recklessly continued to impose, maintain, or

retain disputed charges after receiving notice that those charges were unauthorized and after their representative expressly represented that they would be reversed.

120. Virginia law recognizes willful and wanton negligence where a defendant acts with conscious disregard of another's rights or with reckless indifference to consequences while aware, from existing circumstances and conditions, that the conduct probably will cause injury. *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263, 267 (2003); *Harris v. Harman*, 253 Va. 336, 340–41, 486 S.E.2d 99, 101 (1997).

121. Plaintiff alleges facts supporting such a finding, including that Hotel personnel acknowledged the charges were improper, expressly promised that the charges would be reversed, and nevertheless allowed the charges to remain unreversed.

122. Plaintiff further alleges that Defendants' post-transaction handling of the dispute involved centralized corporate systems and procedures and that the applicable Hilton Defendants knew or should have known of the dispute and the representation concerning reversal.

123. To the extent those acts were performed by agents, the Hilton Defendants are vicariously liable to the extent the acts were within the scope of the agents' authority. To the extent the acts were performed directly by Hilton personnel or through Hilton-controlled systems, the applicable Hilton Defendant is directly liable for its own conduct.

124. Defendants' conduct was willful and wanton to the extent Defendants knowingly or recklessly continued to impose, maintain, or retain disputed charges after receiving notice that the charges were unauthorized and after representing that the charges would be reversed.

125. Plaintiff avers that Defendants' conduct rose above ordinary negligence and constituted willful and wanton negligence under Virginia law. Specifically, Defendants (on their own, or through their franchisees, agents, and employees) acted with a conscious disregard of Plaintiff's

rights and with reckless indifference to the probable consequences of their conduct, in that: (a) Defendants (on their own, or through their franchisees, agents, and employees) assigned rooms to Plaintiff's group in a manner inconsistent with confirmed reservations despite knowing, or being recklessly indifferent to, whether, the Hotel had sufficient rooms to honor those reservations; and (b) Defendants (on their own, or through their franchisees, agents, and employees) posted and knowingly retained unauthorized charges to Plaintiff's payment instruments notwithstanding their own agents' express acknowledgement that the charges were improper and would be reversed. *See*, *Woodson v. Rowland*, 407 S.E.2d 917, 921 (Va. 1991) (willful and wanton negligence exists where a defendant is aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another, yet proceeds in conscious disregard of that known risk).

126. Plaintiff further alleges that Defendants' post-transaction conduct was not limited to isolated acts at the Hotel's physical location. Rather, after Plaintiff disputed the charges, the administration, processing, investigation, and resolution of those disputes involved Defendants' centralized corporate systems, policies, personnel, and procedures, including systems and procedures used to administer guest accounts, payment information, billing disputes, and communications concerning disputed charges.

127. Plaintiff further alleges that Defendants' post-transaction conduct occurred pursuant to centralized policies, procedures, systems, and standards established and maintained by the Hilton Defendants, including policies governing reservations, guest accounts, billing, payment processing, disputed charges, and the handling of guest complaints and disputes.

128. Plaintiff alleges, upon information and belief, that those policies, procedures, systems, and standards were established, maintained, administered, or otherwise controlled through the Hilton

Defendants' Virginia-based corporate operations and were applicable to the Hotel's handling of Plaintiffs reservation, guest account, payment information, and subsequent dispute.

129. Plaintiff alleges that Virginia-based personnel had personal involvement at different times during Plaintiff's charge disputes; however, whether or not Virginia-based personnel intervened personally in any act concerning Plaintiff, Plaintiff alleges that the Hotel's personnel who performed the challenged acts did so within an operational framework established and maintained by the Hilton Defendants, including policies and procedures governing the very conduct at issue.

130. To the extent the Hotel's conduct was undertaken pursuant to, and in implementation of, policies, procedures, systems, or standards established by the Hilton Defendants' Virginia-based corporate operations, Plaintiff alleges that such conduct constitutes conduct attributable to the applicable Hilton Defendant under principles of agency, actual authority, apparent authority, and, where supported by the evidence, ratification.

131. Plaintiff further alleges that the Hilton Defendants' Virginia-based corporate operations thereby supplied the policies, procedures, systems, and operational framework pursuant to which the Hotel administered Plaintiffs reservation, guest account, payment information, and disputed charges. The Virginia-based corporate conduct was therefore not merely incidental to the underlying transaction but formed part of the operational framework through which the challenged conduct was carried out.

132. Plaintiff accordingly alleges that Virginia has a substantial connection to the tortious conduct at issue. Therefore, to the extent the tortious conduct was completed, continued, or otherwise legally located in Virginia through the operation and implementation of those Virginia-based corporate policies and systems, Virginia substantive law governs under Virginia's

lex loci delicti rule. *See*, *McMillan v. McMillan*, 219 Va. 1127, 1130, 253 S.E.2d 662, 664 (1979); *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986).

133. Alternatively, Plaintiff alleges that the Hilton Defendants' own Virginia-based corporate conduct independently gives rise to liability to the extent those Defendants established, maintained, or implemented the policies, systems, and procedures that governed the challenged conduct, separate and apart from any vicarious liability for the Hotel's acts.

134. As a direct and proximate result of Defendants' negligence, Plaintiff suffered economic losses, consequential expenses, emotional damages to the extent recoverable under the governing law, and other damages proximately caused by the alleged conduct.

135. As a direct and proximate result of Defendants' willful and wanton negligence, Plaintiff suffered the damages described above, and Plaintiff is entitled to recover punitive damages, subject to the limitation of Va. Code § 8.01-38.1.

136. Plaintiff seeks compensatory, consequential, and, punitive damages, together with prejudgment interest, costs, and other appropriate relief.

**COUNT IV — ACTUAL FRAUD (Pled with Particularity under Fed. R. Civ. P. 9(b), Including Agency, Apparent Authority, and Ratification)**

137. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

138. After Plaintiff discovered the unauthorized charges to his Visa card ending in 9358 and Mastercard ending in 1240, Plaintiff personally returned to the Hotel and specifically disputed those charges with Hotel personnel.

139. During that in-person dispute, Hotel personnel expressly acknowledged that the disputed charges were improper and represented to Plaintiff that the charges would be reversed. That

representation was false when made, or was made with reckless disregard for its truth, and Defendants did not reverse, and have never reversed, the charges.

140. The representation was material because it concerned whether Plaintiff remained liable for substantial charges and whether the dispute concerning those charges had been resolved.

141. The representation was false when made because, at the time it was made, the person making the representation either knew that the charges would not be reversed or made the representation without any present intention to cause the promised reversal.

142. Plaintiff does not allege fraud merely because Defendants subsequently failed to perform a promise. Rather, Plaintiff alleges that the representation was fraudulent because the speaker's existing state of mind at the time of the representation was inconsistent with the representation that the charges would be reversed.

143. Virginia law recognizes that although a promise concerning future conduct ordinarily does not constitute a misrepresentation of present fact, a promise made with no present intention of performing may constitute actionable actual fraud because the promisor's existing intention is itself a present fact. *SuperValu, Inc. v. Johnson*, 276 Va. 356, 367–68, 666 S.E.2d 335, 341 (2008).

144. Plaintiff alleges that the speaker's fraudulent intent may be inferred from the circumstances existing at the time of the representation, including that: (a) Plaintiff had already specifically disputed the charges; (b) Hotel personnel acknowledged that the charges were improper; (c) the representation concerning reversal was made affirmatively and unequivocally rather than as a mere statement that the Hotel would investigate the matter; (d) the representation was made in circumstances in which Plaintiff was seeking immediate correction of the charges; (e) the

representation induced Plaintiff to cease pursuing the dispute in person and leave the Hotel; and (f) despite the representation, the charges were not reversed.

145. Plaintiff further alleges, to the extent established through discovery, that the Hotel's internal handling of the disputed charges and subsequent failure to reverse them will demonstrate that the speaker knew, or had reason to know, at the time of the representation that the promised reversal would not occur. Plaintiff presently lacks access to Defendants' internal billing, payment, reservation, guest-account, and dispute-resolution records necessary to identify all facts demonstrating the speaker's contemporaneous state of mind.

146. The representation was made with the intent to induce Plaintiff to conclude his in-person dispute and leave the Hotel without taking additional immediate measures to recover the funds or prevent the continued retention of the disputed charges.

147. Plaintiff reasonably and justifiably relied upon the representation. Plaintiff reasonably believed, based upon the Hotel personnel's acknowledgment that the charges were improper and affirmative representation that they would be reversed, that the billing error had been recognized and would be corrected.

148. Plaintiff's reliance was material and causally connected to his damages because, in reliance upon the representation, Plaintiff ceased pursuing immediate additional remedies at the Hotel and to left the Hotel believing that the charges would be reversed.

149. Plaintiff subsequently discovered that the charges had not been reversed and that the disputed amounts remained charged to his payment instruments.

150. Plaintiff alleges that he did not discover, and through reasonable diligence could not reasonably have discovered, the fraudulent nature of the representation until September 2024,

after the conclusion of the dispute processes he pursued in good faith with his credit-card issuers and Booking.com.

151. Plaintiff alleges that the Hotel personnel who made the representation acted within the scope of actual or apparent authority, such that the representation is attributable to the applicable Hilton Defendant under principles of agency.

152. Virginia recognizes that a principal may be liable for an agent's tortious conduct where the principal places the agent in a position that enables the agent, while apparently acting within the agent's authority, to commit a fraud upon a third person. *Dudley v. Offender Aid & Restoration*, 241 Va. 270, 278, 401 S.E.2d 878, 883 (1991) (recognizing the agency principle reflected in Restatement (Second) of Agency § 261).

153. Alternatively, Plaintiff alleges that the Hilton Defendants created the appearance of authority through their branding, reservation systems, guest-account systems, and other representations concerning the Hotel's relationship with Hilton, and that Plaintiff reasonably relied upon that appearance.

154. Plaintiff further alleges that, to the extent one or more Hilton Defendants subsequently acquired full knowledge of the material facts concerning the Hotel's representation and nevertheless adopted, approved, accepted, or failed to repudiate the conduct, those Defendants ratified the representation. See *Weisman*, 247 Va. at 204, 441 S.E.2d at 19.

155. Plaintiff alleges the circumstances constituting fraud with particularity, including the approximate time and place of the representation, the persons involved insofar as presently known, the precise subject matter of the representation, the two specific payment instruments affected, the substance of the representation, Plaintiff's reliance, and the resulting damages.

156. Plaintiff alleges that Virginia substantive law governs this fraud claim under Virginia's *lex loci delicti* rule. Virginia applies the law of the place of the wrong to substantive issues arising from a tort claim. *Dreher v. Budget Rent-A-Car System, Inc.*, 272 Va. 390, 395, 634 S.E.2d 324, 327 (2006); *McMillan v. McMillan*, 219 Va. 1127, 1128–30, 253 S.E.2d 662, 663–64 (1979); *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986).

157. The fraudulent conduct alleged in this Count did not consist solely of an isolated statement made by an individual Hotel employee. The representation that Plaintiff's disputed charges would be reversed was made in the course of administering Plaintiff's reservation, guest account, billing information, and payment dispute through systems, policies, procedures, and operational standards maintained by the Hilton Defendants.

158. Plaintiff alleges, upon information and belief, that the Hotel's personnel were required to administer guest accounts, billing matters, disputed charges, and related guest complaints pursuant to centralized Hilton policies, procedures, systems, and operational standards established, maintained, or controlled through Hilton's Virginia-based corporate operations.

159. Plaintiff alleges that the Hotel personnel who made the representation acted within an operational and corporate framework established and maintained by the Hilton Defendants, including policies and systems governing the handling of guest accounts, billing disputes, and payment-related matters.

160. As the corporate policies, systems, procedures, and operational framework through which the Hotel's conduct was carried out constitute part of the tortious conduct at issue, the alleged fraudulent conduct has a substantial Virginia locus because those policies, systems, and procedures were established, maintained, or administered through the Hilton Defendants' Virginia-based corporate operations.

161. In addition, to the extent the Hotel personnel acted as actual or apparent agents of one or more Hilton Defendants, their representation and conduct in administering Plaintiff's dispute are attributable to the applicable principal under Virginia agency law. Plaintiff therefore alleges that the Virginia-based corporate operations supplied the authority, systems, policies, and operational framework within which the challenged representation was made.

162. Accordingly, Plaintiff alleges that Virginia is the place of the wrong for purposes of the fraudulent conduct attributable to the Hilton Defendants through their Virginia-based corporate operations and agency relationships. Virginia substantive law therefore governs this Count under the lex loci delicti rule. See *Dreher*, 272 Va. at 395, 634 S.E.2d at 327; *McMillan*, 219 Va. at 1128–30, 253 S.E.2d at 663–64.

163. Plaintiff did not discover, and by the exercise of reasonable diligence could not have discovered, the fraudulent nature of Defendants' representation until September 2024, upon the conclusion of the lengthy dispute process Plaintiff pursued in good faith (with his credit card issuers and Booking.com), at which point Plaintiff first learned that Defendants had knowingly retained the unauthorized charges rather than having made an inadvertent error. This action is timely filed within two years of that discovery. Va. Code § 8.01-249(1).

164. Plaintiff suffered actual damages as a direct and proximate result of the fraudulent representation, including the unreversed charges, expenses incurred in returning to the Hotel and attempting to resolve the matter, and other damages recoverable under applicable law.

165. Plaintiff further seeks punitive damages to the extent permitted by applicable law because the alleged fraud was intentional and undertaken with conscious disregard of Plaintiff's rights.

**COUNT V — VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT, Va. Code § 59.1-196 et seq. (Including Agency, Vicarious Liability, and Direct Corporate Conduct)**

166. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

167. Plaintiff's purchase of hotel lodging and related services constituted a "consumer transaction" within the meaning of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-198, being the lease or offering for lease of services to be used primarily for personal or family purposes.

168. The VCPA declares unlawful various fraudulent, false, misleading, and deceptive acts and practices committed by a supplier in connection with a consumer transaction. Va. Code § 59.1-200.

169. Plaintiff alleges that Defendants, directly or through their agents, committed fraudulent, false, misleading, or deceptive acts in connection with Plaintiff's consumer transaction, including:

a. representing that the Hotel would provide the accommodations reflected in Plaintiff's confirmed reservations while failing to provide those accommodations as reserved;

b. imposing unauthorized charges against Plaintiff's payment instruments;

c. representing that the unauthorized charges were improper and would be reversed;

d. failing to reverse the charges after making that representation; and

e. engaging in other deceptive conduct in the administration and resolution of Plaintiff's consumer transaction.

170. Defendants' conduct in charging Plaintiff's payment instruments without authorization, and in misrepresenting that the charges would be reversed, constituted fraudulent, false, or deceptive acts or practices within the meaning of Va. Code § 59.1-200.

171. The deceptive conduct at issue was not exclusively the Italian hotel employees' conduct. Rather, it involved Virginia-based corporate systems, and Virginia-based corporate decision-making and policies directed at a consumer transaction processed through Hilton's Virginia operations.

172. Plaintiff alleges that Virginia substantive law governs this claim under Virginia's lex loci delicti rule. Virginia applies the law of the place of the wrong to substantive issues arising from tort claims. *McMillan v. McMillan*, 219 Va. 1127, 1128–30, 253 S.E.2d 662, 663–64 (1979); *Dreher v. Budget Rent-A-Car System, Inc.*, 272 Va. 390, 395, 634 S.E.2d 324, 327 (2006); *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986).

173. The VCPA violations alleged herein arise from Defendants' deceptive conduct in connection with Plaintiff's consumer transaction, including the administration of Plaintiff's reservation, guest account, payment information, disputed charges, and the subsequent representation that the unauthorized charges would be reversed.

174. Plaintiff alleges that these activities were not administered solely through isolated conduct at the physical location of the Hotel. Rather, the reservation, guest-account, billing, payment-processing, and dispute-resolution functions were performed through centralized Hilton systems, policies, procedures, and operational standards that governed the Hotel's administration of Plaintiff's consumer transaction.

175. Plaintiff alleges, upon information and belief, that the Hilton Defendants established, maintained, administered, or controlled those centralized systems, policies, procedures, and operational standards through their Virginia-based corporate operations and required or expected participating Hotels to administer guest transactions in accordance with those standards.

176. Plaintiff does not allege that Virginia-based personnel personally intervened in every aspect of Plaintiff's individual transaction. Rather, Plaintiff alleges that the Hotel personnel who administered Plaintiff's transaction and made the challenged representations acted within an operational framework established and maintained by the Hilton Defendants, including the

systems, policies, procedures, and standards governing the very consumer activities challenged in this Count.

177. The Virginia-based corporate conduct therefore was not merely incidental to Plaintiff's consumer transaction. The Hilton Defendants' Virginia-based operations established and maintained the corporate framework through which the reservation, guest-account, billing, payment, and dispute-resolution activities at issue were administered.

178. To the extent the Court determines that the place of the wrong is determined by the location of the conduct that created or substantially contributed to the alleged statutory violation, Plaintiff alleges that Virginia is the place of the wrong because the policies, systems, procedures, and operational standards through which the challenged consumer conduct was governed were established, maintained, or administered through the Hilton Defendants' Virginia-based corporate operations.

179. Alternatively, to the extent the Court determines that the Hotel personnel's conduct constitutes the relevant wrongful conduct, Plaintiff alleges that such personnel acted as actual or apparent agents of the applicable Hilton Defendant in administering the consumer transaction and carrying out the policies, procedures, systems, and operational standards established by that Defendant. The Hotel personnel's conduct is therefore attributable to the applicable Hilton Defendant to the extent established under Virginia agency law.

180. Plaintiff accordingly alleges that Virginia has the requisite connection to the deceptive conduct underlying this Count and that Virginia substantive law, including the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 et seq., governs the alleged violations. *See*, *McMillan*, 219 Va. at 1128–30, 253 S.E.2d at 663–64; *Dreher*, 272 Va. at 395, 634 S.E.2d at 327.

181. Plaintiff further alleges that application of Virginia law is particularly appropriate because the challenged conduct concerns the operation of Virginia-based corporate systems, policies, and standards established by the Hilton Defendants and applied to the consumer transaction through their Hotel operations, rather than conduct wholly unrelated to Virginia.

182. Plaintiff does not rely solely upon the Hotel's conduct as an independent act of a legally unrelated entity. Rather, Plaintiff alleges that the relevant Hotel personnel acted within the scope of actual or apparent authority attributable to one or more Hilton Defendants with respect to the reservation, guest-account, billing, payment-processing, and dispute-resolution functions at issue.

183. Virginia agency law provides that the existence of agency depends upon the actual relationship of the parties, including the principal's manifestation of consent that the agent act on its behalf and subject to its control. *State Farm Mut. Auto. Ins. Co. v. Weisman*, 247 Va. 199, 203, 441 S.E.2d 16, 18 (1994); *Murphy*, 216 Va. at 492–95, 219 S.E.2d at 876–78.

184. Plaintiff alleges facts supporting such an agency relationship, including Hilton's alleged control over or administration of centralized reservation systems, guest-account systems, payment-processing systems, reservation data, loyalty-program infrastructure, website, and uniform operational standards.

185. Those allegations concern the very operational functions through which the alleged consumer-protection violations occurred. They therefore support a plausible inference of agency beyond the mere existence of a franchise relationship. *See*, *S.G. v. Coastal Hosp. Assocs., LLC*, No. 2:25-cv-274, slip op. at 11–12 (E.D. Va. Nov. 20, 2025); *Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-cv-204, slip op. at 17–18 (E.D. Va. 2025).

186. Alternatively, Plaintiff alleges that the Hilton Defendants created and maintained an appearance that the Hotel was acting with Hilton's authority by permitting the Hotel to operate under the Hilton name and brand and through Hilton's reservation, guest-account, and loyalty-program infrastructure.

187. Plaintiff reasonably relied upon that appearance in dealing with Hotel personnel and in accepting their representation that the disputed charges would be reversed.

188. Plaintiff further alleges that one or more Hilton Defendants subsequently acquired knowledge of the disputed charges and the Hotel's representation concerning reversal and, to the extent proven, adopted, accepted, ratified, or failed to repudiate the conduct. Such ratification provides an additional basis for imputing the conduct to the applicable principal. *Weisman*, 247 Va. at 204, 441 S.E.2d at 19.

189. The deceptive conduct was not confined to an isolated interaction at the physical premises of the Hotel. Plaintiff alleges that the consumer transaction was initiated through Booking.com from the United States, guaranteed through U.S.-issued financial instruments, administered through the Hotel's Hilton-branded reservation and guest-account systems, followed by disputed charges against Plaintiff's U.S. financial accounts, and thereafter subjected to dispute proceedings involving Plaintiff's U.S. financial institutions and Booking.com.

190. Plaintiff further alleges that the Hilton Defendants' centralized systems, policies, personnel, and corporate administration were materially involved in processing, administering, maintaining, or resolving the reservation and billing relationship.

191. Plaintiff alleges that the deceptive conduct was willful within the meaning of Va. Code § 59.1-204 because Defendants, directly or through their agents, knowingly or intentionally

engaged in the challenged conduct, including maintaining disputed charges after acknowledging that they were improper and after representing that they would be reversed.

192. Plaintiff seeks the remedies authorized by Va. Code § 59.1-204, including actual damages or the statutory minimum, enhanced damages to the extent the trier of fact finds the violation willful, reasonable attorneys' fees and costs, and all other relief authorized by the statute.

193. Plaintiff further alleges that each Hilton Defendant is independently liable under the VCPA to the extent that Defendant itself committed, directed, authorized, participated in, or ratified the deceptive conduct alleged herein.

194. In the alternative, Plaintiff alleges that the applicable Hilton Defendant is vicariously liable for the deceptive conduct of its agent or apparent agent acting within the scope of the authority created or maintained by that Defendant.

195. This claim is timely under Va. Code § 8.01-249(1), which applies the same discovery rule to Consumer Protection Act claims based on misrepresentation, deception, or fraud, for the reasons set forth in Section IV.A below.

196. Defendants' conduct was, on information and belief, willful, entitling Plaintiff to the recovery of statutory and other damages available under Va. Code § 59.1-204, including reasonable attorneys' fees and costs.

197. Plaintiff suffered actual loss as a result of the alleged VCPA violations, including the unreversed charges and other consequential losses proximately resulting from the deceptive conduct.

198. Plaintiff therefore seeks actual damages, statutory minimum damages where applicable, enhanced damages as authorized by Va. Code § 59.1-204(A), reasonable attorneys' fees and costs

under Va. Code § 59.1-204(B), any and other damages available under Va. Code § 59.1-204, prejudgment interest, and all other relief authorized by law.

## IV.A. TIMELINESS OF PLAINTIFF'S CLAIMS

199. Plaintiff's breach of contract claim (Count I) is timely under Virginia's five-year limitations period for actions on a written contract. Va. Code § 8.01-246(2).

## APPLICATION OF EQUITABLE ESTOPPEL, TOLLING, AND STATUTORY OBSTRUCTION REGARDING REGULATORY OMISSIONS

200. Plaintiff incorporates all factual allegations regarding the underlying operational negligence and the willful, wanton, and reckless conduct of Defendants, as if fully set forth herein.

201. Plaintiff's negligence claims—including claims arising from Defendants' willful and wanton negligence—are timely filed under the equitable doctrines of Equitable Estoppel, Equitable Tolling, and statutory obstruction under Virginia Code § 8.01-229(D). Under binding Virginia jurisprudence, a defendant is equitably estopped from asserting a statute of limitations defense where its own confusing corporate configurations, failure to register operational entities, or obstructive litigation conduct impedes a plaintiff from properly identifying and suing the correct party. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 221 Va. 81, 86 (1980).*

202. Plaintiff commenced an action against Hilton Worldwide, Inc. a.k.a. Park Hotels & Resorts, Inc., arising from these same facts, in the Justice of the Peace Court in Texas in September 2023, within the applicable limitations period, which action was dismissed for lack of subject matter jurisdiction in or about early December 2023 without any determination on the merits. Plaintiff thereafter commenced a second action against Hilton Worldwide, Inc. and Park Hotels & Resorts, Inc., arising from these same facts, in the District Court for Travis County,

Texas, on August 18, 2025, which action remained pending until it was dismissed for lack of personal jurisdiction on December 30, 2025, again without any determination on the merits. The instant lawsuit is against Hilton Worldwide Holdings Inc., Hilton Domestic Operating Company Inc., and Park Hotels & Resorts, Inc. Under Va. Code § 8.01-229(E)(1), the time during which a given action was pending in another court is excluded from the computation of any applicable limitations period; and for the reasons mentioned below, Va. Code § 8.01-229(E)(1) should apply to this case even though the named defendants in this action are ***seemingly*** not identical to the defendants named in the prior actions.

203. Prior to initiating the 2023 Texas action in Texas Justice Court, and the 2025 Texas action in the Texas District Court of Travis County, Plaintiff exercised maximum due diligence by searching the official public corporate registry of the Texas Secretary of State to identify the proper entities governing the "Hilton" hospitality brand. The public records maintained by the State of Texas listed **only** Hilton Worldwide, Inc. and Park Hotels & Resorts, Inc. as registered or formerly registered entities.

204. Defendants Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. purposefully failed to maintain active, separate corporate registrations with the Texas Secretary of State, despite continuously targeting Texas consumers, injecting their hospitality products into the Texas stream of commerce, and extracting systemic financial benefits from the state.

205. By failing to register their operational entities while concurrently masking their day-to-day brand management behind the historical, public-facing *Hilton Worldwide, Inc.* corporate name shell, Defendants actively obstructed and concealed the true layout of their operating structure from the public. This structural concealment triggers the tolling provisions of Va. Code § 8.01-

229(D), as Defendants' own regulatory omissions prevented Plaintiff from identifying them within the standard period.

206. Plaintiff's 2023 and 2025 Texas filings against the only publicly registered or formerly registered "Hilton" entities were objectively reasonable. Because Defendant Park Hotels & Resorts, Inc. holds the exact physical corporate shell of the original *Hilton Worldwide, Inc.*, and because all named Defendants share an intertwined historical corporate lineage, shared legal representation, and an identical operational nerve center, service of the 2023 and 2025 Texas actions provided immediate, actual notice of Plaintiff's claims to the centralized Hilton corporate headquarters in McLean, Virginia.

207. Under the equitable principles articulated by the United States Supreme Court in *Krupski v. Costa Crociere S. p. A., 560 U.S. 538 (2010)*, the operative legal inquiry is what the Defendants knew, not what the Plaintiff mistook. Defendants knew or should have known that but for the structural confusion caused by their multi-layered demergers and their failure to register operational entities locally, the core operating entities—Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc.—were the intended targets of the action. Defendants cannot shield themselves behind an unregistered corporate network to manufacture a statute of limitations defense against their own willful and wanton misconduct.

**HILTON'S PROCUREMENT OF A VOID ORDER AND THE RESETTING OF TIMELINES**

208. Hilton's inequitable conduct and active obstruction extended directly into the procedural termination of the Texas state court action. On December 16, 2025, during a hearing before the Texas District Court of Travis County, Texas, the judge announced she would dismiss the action based strictly on Defendants' allegations of a lack of personal jurisdiction; and said judge requested for Hilton's counsel to draft a proposed order as to said dismissal.

209. In drafting the proposed order requested by the court, Hilton's counsel intentionally and inequitably inserted language directing that the case be dismissed "with prejudice." The Texas District Court of Travis County subsequently signed said proposed order on December 30, 2025.

210. Under well-established Texas law, a court lacking personal jurisdiction possesses no legal authority to render a judgment on the merits, rendering a dismissal "with prejudice" wholly **void ab initio** (void from the beginning). *In re E.R., 385 S.W.3d 552, 566 (Tex. 2012)*; *Custom Built Homes v. G.S.G. Furniture Dist.*, 929 S.W.2d 61, 62 (Tex. App.—Houston [14th Dist.] 1996). Thus the entire December 30, 2025 judgment issued by the Texas District Court of Travis County is void.

211. A void judgment is a total legal nullity. It has no binding force, creates no preclusive effect, and is treated under the law as if it never existed. Because it is a permanent legal nullity, it can be collaterally attacked at any time, in any court. A plaintiff's choice not to file a direct appeal or a motion to vacate in the originating Texas court does not validate, cure, or breathe legal life into a void instrument. *Puri v. Mansukhani*, 973 S.W.2d 701, 711 (Tex. App.—Houston [14th Dist.] 1998).

212. Defendants cannot benefit from their own inequitable and legally unauthorized drafting tactics. By procuring a void "***with prejudice***" order after the December 16, 2025 Texas District Court hearing, Hilton actively misrepresented the finality of the Texas dismissal, creating a deceptive procedural barrier designed to trick the Plaintiff into believing the claims were dead on the merits and obstructing Plaintiff from immediately refiling.

213. **Because a void order has no legal existence, the strict 60-day refiling window under the** Texas Saving Statute (Texas CPRC § 16.064 (which states that the statute of limitations is suspended if a case is dismissed for lack of jurisdiction provided the second action is

commenced "not later than the 60th day after the dismissal or other disposition becomes final")) **was never legally triggered and remains paused**. Alternatively, Defendants are equitably estopped from asserting any out-of-time defense because their own deceptive drafting directly induced the procedural delay.

**TIMELINESS AND ACCRUAL OF COMPENSATORY REMEDIES, MENTAL ANGUISH, AND PUNITIVE DAMAGES UNDER THE FRAUD DISCOVERY RULE**

214. Plaintiff's claims for actual fraud (Count IV) and violation of the Virginia Consumer Protection Act (Count V) are governed by the discovery rule codified at Va. Code § 8.01-249(1), under which such claims accrue "when such fraud... is discovered or by the exercise of due diligence reasonably should have been discovered," rather than when the underlying facts giving rise to the fraud first occurred. As alleged above, although Plaintiff discovered the unauthorized charges themselves in August 2023, Plaintiff reasonably believed at that time, based on Defendants' own acknowledgment and assurance, that the charges were an inadvertent (albeit unconscionable) billing error rather than a knowing wrongdoing. Plaintiff did not discover, and could not through reasonable diligence have discovered, the fraudulent nature of Defendants' conduct until September 2024, following the conclusion of a lengthy good-faith dispute process with his credit card issuers and Booking.com. This action is timely filed within the applicable limitations period measured from September 2024.

215. Alternatively, Plaintiff avers as follows in this and the subsequent four paragraphs. Plaintiff's fraud, misrepresentation, ordinary negligence, and willful and wanton negligence claims seek full compensatory and punitive damages for non-tangible pecuniary losses and resulting personal harm—specifically including unreversed unauthorized credit card charges, financial reimbursements paid to displaced group members, necessary transportation and administrative expenses incurred in disputing these transactions, and the severe mental anguish,

emotional distress, and psychological disruption directly inflicted upon the Plaintiff as a proximate result of Defendants' deceptive operational conduct and conscious disregard for Plaintiff's rights.

216. As shown above, pursuant to Virginia Code § 8.01-249(1), actions for fraud, misrepresentation, or mistake do not accrue on the date of the underlying incident, but rather when such deceptive conduct is actually discovered, or through the exercise of due diligence reasonably should have been discovered.

217. Defendants intentionally marketed, contracted, and represented the Hilton Molino Stucky Venice as a unified operation governed seamlessly by the global "Hilton" corporate parent, inducing Plaintiff to book lodging under a false impression of corporate continuity and uniform brand liability.

218. Plaintiff exercised maximum due diligence by tracking the historic corporate name of the brand and filing suit in 2023. Plaintiff did not discover, and could not have reasonably discovered, the true depth of the deceptive corporate shell design, operational shields, unauthorized financial schemes, and willful and wanton misrepresentations until the Texas District Court dismissed (on December 30, 2025) Plaintiff's civil action for lack of personal jurisdiction on the basis of Hilton's own (purposefully confusing) allegations on the nature of its internal structural layout during the hard-fought jurisdictional litigation in Texas District Court.

219. This dismissal (on December 30, 2025) on the basis of Hilton's allegations made Plaintiff realize that the information available on the Texas Secretary of State registry on Hilton was misrepresented by Hilton even though, as noted above, Hilton routinely puts its products on the stream of commerce of Texas.

220. Because the discovery of the true layout of the corporate misrepresentation occurred well within the two-year period preceding the filing of this Complaint, the fraud claim, the associated pecuniary financial damages, the accompanying claims for mental anguish, and the dependent claims for willful and wanton negligence sit completely within the statutory deadline under Va. Code § 8.01-249(1), regardless of the outcome of any other timeliness argument addressed in this Section.

**IMPUTED NOTICE VIA IDENTITY OF INTEREST AND RELATE-BACK DOCTRINE**

221. Defendants will suffer zero unfair prejudice, surprise, or disadvantage by the initiation of this action. Under Fourth Circuit precedent, where closely related corporate entities share an operational hub, an identical trademark network, or corporate counsel, notice delivered to one entity is legally imputed to the others via an "identity of interest." *Goodman v. Praxair, Inc.*, 494 F3d 458, 473-74 (4th Cir. 2007).

222. Because Park Hotels & Resorts, Inc., Hilton Worldwide Holdings, Inc., and Hilton Domestic Operating Company Inc. operate as branches of the exact same corporate tree—bound together by their formalized separation, indemnification, and demerger agreements—notices delivered to the historical corporate shell in 2023 and 2025 operated as functional, constructive notices to the entire corporate headquarters in McLean, Virginia.

**V. DAMAGES**

223. Plaintiff seeks compensatory, consequential, statutory, and punitive/exemplary damages in an aggregate amount to be proven at trial, which plausibly and in good faith (under *Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938)) exceeds the $75,000 jurisdictional threshold exclusive of interest and costs under 28 U.S.C. § 1332, consisting of:

- **Actual and Present-Value Loss:** The actual financial value of the unauthorized, unreversed credit card charges, adjusted to reflect present-day economic value, inflation, and foreign exchange transaction fees.
- **Consequential Damages (Mitigation Costs):** Direct financial outlays incurred by Plaintiff to mitigate Defendants' breach, including but not limited to:
  - The emergency procurement of alternative luxury accommodations in Venice, Italy during peak tourist season (August 2023) at premium, last-minute market rates (initially estimated at $19,678.00), adjusted to reflect present-day economic value, inflation, and foreign exchange transaction fees.
  - The financial reimbursement paid by Plaintiff to members of his traveling group (initially estimated at $11,775.00) to cover their displaced lodging, local transport, and associated logistical costs, adjusted to reflect present-day economic value, inflation, and foreign exchange transaction fees.
- **Consequential Travel, Administrative Expenses and Consequential Expenses:** Out-of-pocket transportation costs, international flights, and related travel expenses physically incurred by Plaintiff in returning to or communicating with the Hotel to dispute and investigate the unauthorized and undue charges, bank/credit-card fees, interest actually incurred, communication expenses, foreign-exchange losses, cancellation of pre-planned events, loss of enjoyment of trip, and other reasonable expenses caused by the wrongful conduct (initially estimated at $55,884.00).
- **Pre-Judgment Interest:** Pre-judgment interest on the principal sum of the unauthorized charges at Virginia's statutory rate of 6% per annum pursuant to Va. Code § 6.2-302 and

§ 8.01-382, accruing at a daily rate of $0.4932 from August 20, 2023, until the date judgment is entered.

- **Statutory Damages and Attorneys' Fees:** Statutory damages and full reasonable attorneys' fees as expressly authorized under Count V (e.g., Virginia Consumer Protection Act or applicable statutory text), which count toward the $75,000 diversity threshold.
- **Punitive Damages:** Punitive damages up to the $350,000 statutory cap set by Va. Code § 8.01-38.1, necessitated by Defendants' willful, wanton, and reckless conversion of Plaintiff's financial data, their refusal to reverse known unauthorized charges, and their fraudulent bad-faith processing of international consumer funds.
- **Exemplary Damages:** In Count V, Plaintiff asserts a cause of action under the Virginia Consumer Protection Act (VCPA), Va. Code § 59.1-196 et seq. The VCPA explicitly provides for the recovery of actual damages, but mandates that if the trier of fact finds the violation was willful, the court may award three times the actual damages sustained (treble damages). Va. Code § 59.1-204(A). Plaintiff has alleged that Defendants willfully processed unauthorized, unreversed charges, refused to honor contracted luxury reservations during peak European travel season, and failed to remediate the errors via their Virginia-based corporate infrastructure. Because the VCPA explicitly authorizes the trier of fact to multiply Plaintiff's actual and consequential damages, it is a legal impossibility for Defendants to prove to a "legal certainty" that a potential trial award cannot exceed $75,000. When combined with Virginia's separate $350,000 statutory cap for punitive damages under Va. Code § 8.01-38.1, the amount-in-controversy threshold is overwhelmingly satisfied.

## VI. <u>DEMAND FOR JURY TRIAL</u>

224. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, for: (a) compensatory damages in an amount to be determined at trial; (b) exemplary damages as permitted by law; (c) punitive damages as permitted by law; (d) statutory damages and reasonable attorneys' fees under Count V; (e) pre- and post-judgment interest; (f) costs of suit; and (g) such other and further relief as the Court deems just and proper.

Respectfully submitted,

08/10/2026

/s/ Yves Deugoue

YVES DEUGOUE, Pro Se
105 Ash St, #10,
Pittsburg, TX 75686
Telephone: (703) 307-1675
Email: wantoude@yahoo.com